PEOPLE v BUTLER

Docket No. 90568. Submitted May 8, 1987, at Detroit. Decided June 15, 1987. Leave to appeal applied for.

Wayne Butler was charged with arson of a dwelling house. At his preliminary examination only two witnesses testified, Lt. Robert Hill, a firefighter, and Jeannette King, defendant's wife. Defendant was bound over to the Recorder's Court of Detroit. The court, Michael J. Talbot, J., dismissed the charges based on the marital privilege. The people appealed.

The Court of Appeals *held:*

The personal wrong exception to the statutory spousal privilege allows one spouse to testify against the other in a criminal prosecution only where the cause of action arose from a wrong which is purely personal to the testifying spouse and in no sense embracing a public wrong. The personal wrong exception does not apply in a prosecution for arson.

Affirmed.

1. WITNESSES — SPOUSAL PRIVILEGE — RULES OF EVIDENCE.

The statutory spousal privilege has not been abrogated by the Rules of Evidence (MCL 600.2162; MSA 27A.2162; MRE 601).

2. WITNESSES — SPOUSAL PRIVILEGE — PERSONAL WRONG EXCEPTION — ARSON.

The personal wrong exception to the statutory spousal privilege allows one spouse to testify against the other in a criminal prosecution only where the cause of action arose from a wrong which is purely personal to the testifying spouse and in no sense embracing a public wrong; the personal wrong exception does not apply in a prosecution for arson.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief

REFERENCES

Am Jur 2d, Witnesses §§ 125-130.

Crimes against spouse within exception permitting testimony by one spouse against other in criminal prosecution. 11 ALR2d 646.

of the Criminal Division, Research, Training and Appeals, for the people.

· *Thomas E. Quarterman,* for defendant.

Before: BEASLEY, P.J., and HOOD and E. E. BORRADAILE,* JJ.

PER CURIAM. Defendant, Wayne Butler, was charged with arson of a dwelling house, in violation of MCL 750.72; MSA 28.267. A preliminary examination was conducted on November 12, 1985, in the 36th District Court, at which the only two witnesses were Jeannette King and Fire Department Lt. Robert Hill. Defendant was bound over for trial. On December 2, 1985, defendant filed a motion in Detroit Recorder's Court to quash the information and dismiss the charges on the ground, among other things, that Jeannette King was defendant's wife, so that defendant had a marital privilege preventing her testimony against him. Two hearings were conducted. At the second of these, on January 31, 1986, the Recorder's Court dismissed the charges based upon the marital privilege. The prosecutor now appeals.

At the preliminary examination, Jeannette King testified that on the night of November 2, 1985, defendant was outside of the four-family dwelling in which she lived, throwing rocks at the windows and asking to be let in. When she told him to stop because he was upsetting her children, he replied, among other things, "Baby, I'll die for you." Subsequently, she went across the hall and knocked on her neighbor's door, telling the neighbor that she was frightened. When asked why she was scared, she testified in response:

Because he had came—everything was going so

---

* Circuit judge, sitting on the Court of Appeals by assignment.

fast, it was night, after night he was doing some-
thing.

He broke my window, he stabbed me, he choked
me, he beat me up when I was trying to go to
school and I was just scared.

She then went into the neighbor's apartment,
taking her two children with her and closing the
door of her own apartment. Approximately
twenty-five or thirty minutes later, defendant
came to the outside front door of the neighbor's
apartment, beat on the door and asked if King was
upstairs. He then said, "Come on down, Jeannette,
because the house is on fire." She was frightened,
but simply "sat there because he was walking back
and forth saying, 'Bitch, you're going to die.' " The
neighbor called the fire department. King testified
that, at the time she left her apartment, one of the
burners on her gas stove was burning low, but
nothing else was burning. She testified that her
own apartment door had no lock and that defen-
dant told her he had a key to the front door of the
building. On cross-examination, she denied that
she was defendant's girlfriend, saying that he used
to stay in her apartment "against my will." She
said that she did keep candles and incense in her
home. At one point, she saw the reflection of
orange flames on the wall. By the time the firemen
arrived, "it wasn't nothing burning but the floors."

Lt. Hill testified that he investigated the fire
approximately four hours after the fire depart-
ment responded to the initial call. He determined
that the fire was deliberately set in the middle of
the kitchen floor and that it had burned for ap-
proximately twenty minutes prior to the notifica-
tion of the fire department. He also testified that
he took defendant's statement that same morning.
According to the witness, defendant told him that

he had had a fight with his wife a few days before over money he had given her, during which he had accused her of buying drugs with it. He left for about two days. When he returned, the evening of the fire, there was a man in the apartment who pulled a knife on him. He left the apartment and returned 2½ hours later. When he returned, "he said the stove was burning and a candle was burning in a grease can." In his statement, defendant also said that clothes were lying "all over the place." He sat by the window for fifteen minutes and then went across the street to drink with someone and then went to his own home. He later returned to the apartment and was arrested. Defense counsel cross-examined Hill about the arrest of defendant.

The parties agree that the only issue on this appeal is whether Jeannette King's testimony was inadmissible under MCL 600.2162; MSA 27A.2162, which provides in relevant part:

> A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except in suits for divorce and in cases of prosecution for bigamy, in cases of prosecution for a crime committed against the children of either or both, and where the cause of action grows out of a personal wrong or injury done by one to the other.

The prosecutor's first and longest argument against application of the privilege in this case is that the above-quoted statute has been abrogated by MRE 601. This same argument, raised by the same attorney, was rejected last year by the Supreme Court in *People v Love*.[1] In fairness to

[1] 425 Mich 691, 698-700; 391 NW2d 738 (1986).

counsel, the Supreme Court made its decision subsequent to the filing of the prosecution's brief in this case.

The prosecutor's other argument is that the testimony falls within one of the statutory exceptions quoted above. Specifically, he says that "the cause of action grows out of a personal wrong or injury done by one to the other." The *Love* Court dealt with this exception. In *Love*, a wife's testimony indicated that her husband first pulled out a gun and shot a friend of hers and then kidnapped her. The Court held that the spousal privilege prevented the wife from testifying to the killing, but not to the kidnapping, even though it was plain that the husband killed the man *because* he thought the man was his wife's lover. The Court opined, in agreement with the prosecutor here, that "privileges should be narrowly defined and the exceptions thereto broadly construed,"[2] but also went on to say that "we cannot contort the unambiguous words of a statute beyond their plain and ordinary meaning. The intent of the Legislature, as expressed by the words used in the statute, is controlling."[3]

The *Love* Court cited the 1892 case of *People v Quanstrom*,[4] in which the Supreme Court ruled that the statutory spousal privilege, which at that time did not contain a specific exception for bigamy, prevented a wife from testifying against her husband on a bigamy charge. In 1892, the statute contained the same "personal wrong" exception it does today. The *Love* Court observed that the *Quanstrom* Court held that bigamy did not involve a wrong committed against the wife and proceeded to quote the following language from *Quanstrom*:

[2] *Id.,* p 700.
[3] *Id.,* p 701.
[4] 93 Mich 254; 53 NW 165 (1892).

The language of the rule at common law was as broad as the language "personal injury" in our statute, and that language meant, and was held to mean, violence, either actual or constructive, to the person, and by a long line of decisions the wife was not allowed to give testimony in prosecutions for bigamy, or any other crime not involving personal violence or corporeal injury to her. . . . *A cause of action growing out of a personal wrong is one designed to protect or secure some individual right. The right, as well as the wrong, must pertain to the person. It must be one that is purely personal in its character, and in no sense can the exception here be said to embrace public wrongs,* which are personal only in the sense that they wound the feelings or annoy or humiliate, but inflict no injury upon the person. [*Love, supra,* pp 701-702.]

The *Love* Court went on to say: "The phrase 'grows out of' indicates that the particular cause of action must be for the personal injury inflicted upon one spouse by another."[5] The *Quanstrom* Court concluded with the following language regarding the crime of bigamy:

If not a crime against her, it certainly is not a wrong which is personal to her. Criminal statutes are not grounded in personal grievances, but in public injuries, and a prosecution for bigamy is not a cause of action growing out of a personal wrong or injury. [*Quanstrom, supra,* p 260.]

Here, the prosecutor asks us to limit *Quanstrom* to its facts. The Supreme Court in *Love* clearly did not do so. Under *Love* and *Quanstrom,* King could testify against defendant only if the *cause of action* arises from a wrong which is *purely* personal in character, in no sense embracing a public wrong. Defendant was charged with violating MCL 750.72; MSA 28.267, which provides:

[5] *Love, supra,* p 702.

> Any person who wilfully or maliciously burns any dwelling house, *either occupied or unoccupied,* or the contents thereof, *whether owned by himself or another,* or any building within the curtilage of such dwelling house, or the contents thereof, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years. [Emphasis added.]

The wording of the statute clearly makes arson of a dwelling house a felony, regardless of whether there are any persons in the house and regardless of whether a defendant burns his own property. It is plain that the statute means to prevent not the injury of others nor the destruction of the property of others, but the public wrong of burning any dwelling house, any time, anywhere for any reason. This is not a cause of action "designed to protect or secure some individual right," nor to prevent "personal violence or corporeal injury" to any person.

It is true that one view of the testimony would indicate that defendant committed a personal assault on King, a crime certainly involving "personal violence or corporeal injury to her." It might also be argued that defendant's alleged actions amounted to the malicious destruction of King's personal property, a crime which, if not personally violent, at least is more personal than simple arson. However, defendant was charged neither with personal assault nor with malicious destruction of property. The *cause of action* was arson of a dwelling house, which is a *public* wrong.

Under the terms of the statute, therefore, as interpreted by both *Love* and *Quanstrom,* the exception does not apply in this case, and the privilege stands.

Affirmed.