## PEOPLE v BUTLER

Docket No. 81188. Decided June 1, 1988. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgments of the Court of Appeals and the trial court and remanded the case to the trial court for further proceedings.

Wayne Butler was charged in the Detroit Recorder's Court with arson of a dwelling house. The court, Michael J. Talbot, J., granted the defendant's motion to quash the information and dismissed the charge on the ground that one of two witnesses at the preliminary examination was the defendant's wife and that the defendant was entitled to assert the spousal privilege. The Court of Appeals, BEASLEY, P.J., and HOOD and BORRA-DAILE, JJ., affirmed in an opinion per curiam, concluding that the wife-victim could testify only if the cause of action arose from a wrong purely personal in character and in no sense embraced a public wrong (Docket No. 90568). The people apply for leave to appeal.

In an opinion per curiam, signed by Chief Justice RILEY and Justices BRICKLEY, CAVANAGH, BOYLE, and GRIFFIN, the Supreme Court *held:*

Arson of a person's dwelling is a personal wrong or injury to that person. A victim may not be precluded from testifying in the prosecution of the victim's spouse for the arson on the basis of spousal privilege.

Reversed and remanded.

Justice LEVIN, joined by Justice ARCHER, writing separately, stated that leave to appeal should be granted. Peremptory reversal should be reserved for cases in which the law is settled and no factual assessment is required. Because the Court of Appeals in this case did not regard the law as settled, peremptory disposition is not appropriate.

160 Mich App 721; 408 NW2d 532 (1987) reversed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Thomas E. Quarterman,* for the defendant.

PER CURIAM. The spousal privilege provided in MCL 600.2162; MSA 27A.2162 contains an exception for cases in which "the cause of action grows out of a personal wrong or injury done by one [spouse] to the other . . . ." We hold today that an arson of a dwelling, under the circumstances of this case, is such a "personal wrong or injury" and that the victim may therefore testify in the prosecution of her spouse for that arson.

I

The prosecution has alleged that the defendant set fire to his wife's apartment on November 2, 1985. Accordingly, he was charged with burning a dwelling house.[1] MCL 750.72; MSA 28.267.

At the preliminary examination, the defendant was bound over as charged. The two witnesses at the preliminary examination were the defendant's wife,[2] who was the victim of the arson, and a lieutenant with the Arson Section of the Detroit Fire Department. The victim testified that the defendant had issued various threats against her, and she described the circumstances of the fire in a manner that established probable cause that the defendant had started the fire. The lieutenant's

---

[1] Any person who wilfully or maliciously burns any dwelling house, either occupied or unoccupied, or the contents thereof, whether owned by himself or another, or any building within the curtilage of such dwelling house, or the contents thereof, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years. [MCL 750.72; MSA 28.267.]

[2] At the preliminary examination, the defendant's wife described the defendant as her ex-boyfriend. She said nothing about a marriage, and said that they had lived together "[a]gainst my will . . . [w]henever he kicked the door in and came in." Since there was no evidence of marriage, there was no discussion of the spousal privilege.

testimony helped establish that the fire had been started intentionally.

In the trial court, the defendant moved to quash the information. He relied upon the spousal privilege[3] and upon documentary proof (a marriage license and a marriage certificate) that the defen-

---

[3] MRE 501 provides that the "[p]rivilege is governed by the common law, except as modified by statute or court rule." The spousal privilege is provided by the statutory provision quoted below, and applies in criminal cases, as well as civil cases. *People v Bowen,* 165 Mich 231, 237; 130 NW 706 (1911). As explained in *People v Love,* 425 Mich 691, 696, n 5; 391 NW2d 738 (1986) (opinion of CAVANAGH, J.), the spousal privilege must be distinguished from the marital communication privilege. It should also be observed that the spousal privilege has been subjected to scholarly criticism. *Love,* 710 (opinion of BOYLE, J.). The statute provides:

> *A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except* in suits for divorce and in cases of prosecution for bigamy, in cases of prosecution for a crime committed against the children of either or both, and *where the cause of action grows out of a personal wrong or injury done by one to the other,* or grows out of the refusal or neglect to furnish the wife or children with suitable support, and *except in cases of desertion or abandonment, and cases* arising under [MCL 551.6; MSA 25.6], relating to marriage, and cases where the husband or wife shall be a party to the record in a suit, action, or proceeding, where the title to the separate property of the husband or wife so called or offered as a witness, or where the title to property derived from, through or under the husband or wife so called or offered as a witness, shall be the subject matter in controversy or litigation in such suit, action or proceeding, in opposition to the claim or interest of the other of said married persons, who is a party to the record in such suit, action or proceeding; and in all such cases, such husband or wife who makes such claim of title, or under or from whom such title is derived, shall be as competent to testify in relation to said separate property and the title thereto without the consent of said husband or wife, who is a party to the record in such suit, action or proceeding, as though such marriage relation did not exist; nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage, but in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify. [MCL 600.2162; MSA 27A.2162. Emphasis supplied.]

dant and the victim had been married on April 25, 1985. After two hearings, the trial court granted the motion.[4] The trial court then entered an order dismissing the prosecution.[5]

The prosecutor appealed in the Court of Appeals, which affirmed. *People v Butler,* 160 Mich App 721; 408 NW2d 532 (1987). Noting this Court's decisions in *People v Love,* 425 Mich 691; 391

[4] At the hearings, the parties discussed the scope and proper application of the spousal privilege. They also discussed two other aspects of this case that, in light of our disposition today, we find unnecessary to resolve. The first is the exact marital status of the parties. Besides the fact that the victim did not admit the marriage, there was some indication that she had been previously married but not divorced.

Another aspect of this case that was discussed at the hearings, and that we need not resolve, is the question whether the spousal privilege was waived by the defendant's failure to raise it at the preliminary examination. The trial court accepted the defendant's account that he had told his attorney at the preliminary examination that he was married to the victim (accounting for counsel's questions to the victim about her relationship with the defendant):

> I think what [defense counsel] explained to you and I—I don't know that he did so on the record or not—was that the defendant had said something to him about, "We were married." That's why [defense counsel] got up there and asked. She said, "No. We were ex," something or other, boyfriend. . . . And I'm not going to put the burden on [defense counsel] at this point. He tried to figure out from the complainant whether or not he's got himself a privilege situation. She said no. He's got a client who's whispering in his ear, "Yes we are." And, you know, the better forum [sic: form?] might have been to jump up and invoke privilege, but I suspect the judge would have asked, "Miss, are you married?" "No." Keep on going. I would have done that. There certainly was not time to be producing any marriage certificate in this world [sic: whirl?], as [defense counsel] was able to do later.

For present purposes, we need not review the trial court's determination that the questions about the relationship served to preserve the issue.

[5] Another question we need not decide today is whether the spouse's preliminary examination testimony could have been introduced at trial under MRE 804(a)(1), (b)(1). Cf. *People v Love,* n 3 *supra,* 708 (opinion of CAVANAGH, J.). That issue would, of course, depend in part on whether the issue of privilege was properly raised at the preliminary examination.

NW2d 738 (1986), and *People v Quanstrom,* 93
Mich 254; 53 NW 165 (1892), the Court of Appeals,
*supra,* 726, concluded that the victim "could testify
against defendant only if the *cause of action* arises
from a wrong which is *purely* personal in charac-
ter, in no sense embracing a public wrong." (Em-
phasis in the original.) The Court of Appeals ex-
plained:

> The wording of the statute clearly makes arson
> of a dwelling house a felony, regardless of whether
> there are any persons in the house and regardless
> of whether a defendant burns his own property. It
> is plain that the statute means to prevent not the
> injury of others nor the destruction of the property
> of others, but the public wrong of burning any
> dwelling house, any time, anywhere for any rea-
> son. This is not a cause of action "designed to
> protect or secure some individual right," nor to
> prevent "personal violence or corporeal injury" to
> any person.
>
> It is true that one view of the testimony would
> indicate that defendant committed a personal as-
> sault on King, a crime certainly involving "per-
> sonal violence or corporeal injury to her." It might
> also be argued that defendant's alleged actions
> amounted to the malicious destruction of King's
> personal property, a crime which, if not personally
> violent, at least is . more personal than simple
> arson. However, defendant was charged neither
> with personal assault nor with malicious destruc-
> tion of property. The *cause of action* was arson of
> a dwelling house, which is a *public* wrong.
>
> Under the terms of the statute, therefore, as
> interpreted by both *Love* and *Quanstrom,* the ex-
> ception does not apply in this case, and the privi-
> lege stands. [Emphasis in original. *Butler,* 160
> Mich App 727.]

The prosecutor has now applied to this Court,
seeking leave to appeal.

II

The issue before us today is simply stated. Is the arson of a person's dwelling a "personal wrong or injury" to that person? We think that an arson of a person's dwelling clearly is a "personal wrong or injury" to that person, and we reject a contrary interpretation as illogical and unreasonable.

*Quanstrom* was a bigamy case, and it is therefore unnecessary to overrule *Quanstrom*.[6] We see no reason, though, to interpret the "personal wrong or injury" exception in the narrow fashion stated by *Quanstrom:*

> If not a crime against her, [bigamy] certainly is not a wrong which is personal to her. Criminal statutes are not grounded in personal grievances, but in public injuries, and a prosecution for bigamy is not a cause of action growing out of a personal wrong or injury.
>
> *       *       *
>
> A personal wrong or injury is an invasion of a personal right; it pertains to the person, the individual. A cause of action growing out of a personal wrong is one designed to protect or secure some individual right. The right, as well as the wrong, must pertain to the person. It must be one that is purely personal in its character, and in no sense can the exception here be said to embrace public wrongs, which are personal only in the sense that they wound the feelings or annoy or humiliate, but inflict no injury upon the person. [*Quanstrom,* 93 Mich 257, 260.]

Setting fire to a person's dwelling does more

---

[6] We need not discuss *Love* at length. There the defendant was convicted of murdering a male friend of his estranged spouse, and of kidnapping his spouse after the murder. In the present case, the Court of Appeals has relied upon *Love* as evidence of the continued vitality of the *Quanstrom* analysis. This Court did not achieve a majority opinion in *Love,* nor did a majority state its adherence to the analysis offered in *Quanstrom.*

than "wound the feelings or annoy or humiliate." It places the person in great danger, and it threatens or destroys personal property. Though the record of the preliminary examination reveals that the defendant likely thought the victim and her children were away from the apartment at the time he set the fire, he could not have known that with certainty, nor could he have known that they would not return.

The Court of Appeals observes that the statutory violation of which the defendant was charged— burning a dwelling house—imposes liability even if the dwelling house is unoccupied, and even if the dwelling house is owned by the person who sets the fire. We need not today decide whether the spousal privilege would apply in such situations. Before us today is a case in which the defendant is said to have started a fire in the apartment where his spouse and her children lived. Other than a physical beating directly inflicted upon a victim, it is difficult to imagine anything that would more clearly be a "personal wrong or injury."

In *People v Sebring,* 66 Mich 705, 706-707; 33 NW 808 (1887), this Court stated:

> It would be a strange rule of law, indeed, either common or statute, which would not allow a wife, when assaulted and beaten until her life is endangered by a cruel and malicious husband, to resort to the courts and make her complaint, and secure his arrest. This is not a case which can find support even under that barbarous rule which has been supposed by some ancient authorities to have had an existence among the early customs recognized by the common law, and which permitted the husband to punish his wife under the pretense of needed chastisement. Nor was anything of the kind pleaded as justification in this case. The offense charged is a crime,—one endangering the life of the wife.

There is no question but that at common law the general rule is that neither husband nor wife are competent witnesses against each other in cases, civil or criminal, where either is directly interested in the result of the proceedings. There have, however, always existed at common law exceptions to this rule. One of these exceptions is where the husband commits an assault and battery upon his wife. Then she is a competent witness in a criminal prosecution against him, or in a case of maliciously shooting at her. *Lady Lawley's Case,* Bull NP 287 [1817]; *Rex v Azir,* 1 Strange 633 [1792]: *Soule's Case,* 5 Greenl 407 [1828]; *State v Davis,* 3 Brev 3 [1811]; *Lord Audley's Case,* 3 How St Tr 402, 413, Hutton, 115, 116 [1631]; *Parsons v People,* 21 Mich 509 [1870].

If the wife could not complain of or be a witness against her husband in these cases, she might not unfrequently be subjected to the most atrocious and brutal conduct from her husband without remedy. Not only the ends of justice, but public policy alike, require that she should be at liberty to complain and prosecute as if she were a *feme sole* in criminal cases. The law will not allow the marriage relation to be so used as to protect the criminal, or shield him from the just penalty for his crime.

Act No. 211, Laws of 1885, provides that—

"A husband shall not be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent, except in cases where the cause of action grows out of a personal wrong or injury done by one to the other."

Thus it will be seen that it is the policy of the law to extend the right of the wife to bear testimony against the husband in cases of violation of her personal rights, rather than to restrict it.

We find the principles stated in *Sebring* to be more persuasive and more germane to the present situation than the statements that this Court

made in the *Quanstrom* bigamy case. Accordingly, in lieu of granting leave to appeal, we reverse the judgments of the Court of Appeals and the trial court. We remand this case to the Recorder's Court for the City of Detroit for further proceedings that are consistent with this opinion. MCR 7.302(F)(1).

Riley, C.J., and Brickley, Cavanagh, Boyle, and Griffin, JJ., concurred.

Levin, J. (*separate opinion*). We would grant leave to appeal.

Peremptory reversal should be reserved for those cases in which the law is settled and no factual assessment is required.[1] The Court of Appeals did not, as set forth in the opinion of the Court, regard the law as settled. Because the law is not settled, peremptory disposition is not appropriate.

Archer, J., concurred with Levin, J.

[1] See *Schweiker v Hansen,* 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting). ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error."); *Leis v Flynt,* 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting). ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa,* 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting].")

See also *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314; 422 NW2d 680 (1988).