PEOPLE v POHL

Docket No. 144633. Submitted August 11, 1993, at Lansing. Decided
October 19, 1993, at 9:20 A.M. Leave to appeal sought.

David G. Pohl was convicted by a jury in the Ingham Circuit
Court, Peter D. Houk, J., of breaking and entering an occupied
dwelling with intent to commit larceny after he violated a
restraining order not to enter the marital home he had shared
with his wife before she sought a divorce and not to remove
personal property from the home. In a departure from the zero
to one-year minimum sentence of imprisonment recommended
by the sentencing guidelines, the trial court sentenced the
defendant to eighty-six months to fifteen years. The defendant
appealed, claiming that there was insufficient evidence of larce-
nous intent, that his wife testified at trial in violation of the
spousal privilege, and that his sentence violates the principle of
proportionality.

The Court of Appeals *held:*

1. The defendant raised a question of fact concerning feloni-
ous intent by contending that he had taken the personal
property from the home in a good-faith belief that he had a
right to do so. Viewing the evidence in a light most favorable to
the prosecution, there was sufficient evidence from which the
jury could conclude beyond a reasonable doubt that the defen-
dant's belief of a right to take the property was not held in
good faith.

2. The spousal privilege, MCL 600.2162; MSA 27A.2162, does
not bar one spouse from testifying against the other without
the other's consent in actions growing out of a personal wrong
or injury done by one spouse to the other. In an appropriate
case, such as this one, the destruction of personal property can
constitute a personal wrong or injury for purposes of the

REFERENCES
Am Jur 2d, Burglary §§ 1, 8, 10, 24; Injunctions §§ 10, 84, 336;
Larceny §§ 35, 41; Trial § 503.
Crimes against spouse within exception permitting testimony by
one spouse against other in criminal prosecution—modern state
cases. 74 ALR4th 223.

spousal privilege. Accordingly, testimony by the defendant's wife was not barred by the spousal privilege.

3. The sentence imposed is proportionate to the crime committed. The trial court's departure from the sentencing guidelines was supported by aggravating factors not adequately reflected in the guidelines.

Affirmed.

1. CRIMINAL LAW — BREAKING AND ENTERING — MARITAL HOME — RESTRAINING ORDERS.

A spouse who violates a restraining order issued in divorce proceedings not to enter the marital home and take personal property from the home may be convicted of breaking and entering an occupied dwelling with intent to commit larceny (MCL 750.110; MSA 28.305).

2. EVIDENCE — SPOUSAL PRIVILEGE.

The spousal privilege does not bar one spouse from testifying against the other in actions growing out of a personal wrong or injury done by one spouse to the other; the destruction by one spouse of personal property in the marital home in violation of a restraining order not to enter the home may constitute a personal wrong or injury against the other spouse for purposes of the spousal privilege (MCL 600.2162; MSA 27A.2162).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, and *Susan L. LeDuc,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*), for the defendant.

Before: HOOD, P.J., and CAVANAGH and R. J. TAYLOR,* JJ.

PER CURIAM. Defendant was convicted by a jury of breaking and entering an occupied dwelling with intent to commit larceny, MCL 750.110; MSA 28.305. He was sentenced to a term of eighty-six months to fifteen years' imprisonment and appeals as of right. We affirm.

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant and his wife were in the midst of a divorce. There was a restraining order prohibiting defendant from entering the marital home and "from removing any personal property" from the home. The locks on the doors had been changed.

Defendant admits that he broke into the home by pushing against the back door until it separated from its frame. He also admits that he removed personal property from the home, some of which was his own, but which he admits was covered by the restraining order. He nevertheless argues that there was insufficient evidence of larcenous intent because he took the property under a claim of right. We view claims of insufficiency of the evidence in the light most favorable to the prosecution. *People v Petrella,* 424 Mich 221, 268-269; 380 NW2d 11 (1985). Against this standard, defendant's claim fails.

Larceny requires an intent to take and carry away someone else's property without that person's consent. *People v McFarland,* 165 Mich App 779, 781; 419 NW2d 68 (1988). For purposes of larceny, the "owner" is the person who has rightful possession and control of the property. *People v Hatch,* 156 Mich App 265, 267; 401 NW2d 344 (1986). Further, there is no right to enter into one's home, in violation of a restraining order or, by analogy, to remove one's property under similar restraint. See *People v Szpara,* 196 Mich App 270, 273-274; 492 NW2d 804 (1992). However, "[i]f the defendant in good faith believed that the [property] . . . was his . . . *and that he was entitled to its possession,* he could not be guilty of . . . larceny in taking it, because there would be no felonious intent, 'and if the defendant, for any reason whatever, indulged no such intent, the crime cannot have been committed.'" *People v Holcomb,* 395 Mich 326, 333; 235 NW2d 343 (1975)

(emphasis added), quoting *People v Walker,* 38 Mich 156 (1878).

Here, the evidence showed that defendant was prohibited by a court order from entering the marital home and from removing personal property found therein. Therefore, defendant's testimony—that he, in good faith, believed that he had a right to take the property in question even though he was fully aware of the restraining order—created a question of fact for the jury regarding the issue of felonious intent. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence from which the jury could conclude beyond a reasonable doubt that defendant's belief was not held in good faith and that he therefore had the requisite felonious intent. Defendant's argument with regard to the claim of right was placed before the jury, which obviously rejected it.

Defendant next argues, relying on the spousal testimonial[1] privilege statute, that he was denied a fair trial when his wife was allowed to testify. We disagree.

Section 2162 of the Revised Judicature Act, MCL 600.2162; MSA 27A.2162,

> bars one spouse from testifying for or against the other without the other's consent *except in* (1) actions for divorce, (2) prosecutions for bigamy or for a crime committed against the children of either or both, (3) *actions growing out of a personal wrong or injury done by one to the other* or the refusal or neglect to furnish the spouse or children with suitable support, (4) cases of desertion or abandonment, and (5) certain cases relating to marriage and title to property. [*People v Ha-*

---

[1] This case does not involve the marital communications privilege. See the last clause of MCL 600.2162; MSA 27A.2162.

*macher,* 432 Mich 157, 161; 438 NW2d 43 (1989); emphasis added.]

Defendant contends that he merely committed a property crime, not "a personal wrong or injury done by one [spouse] to the other" and that, therefore, his wife could not be called to testify. We strongly disagree.

Clearly, this exception applies to obviously personal crimes committed against a spouse, such as attempted murder, kidnapping, criminal sexual conduct, and felonious assault. See, e.g., *People v Love,* 425 Mich 691; 391 NW2d 738 (1986) (kidnapping); *People v Ellis,* 174 Mich App 139; 436 NW2d 383 (1988) (kidnapping and first-degree criminal sexual conduct); *People v Sykes,* 117 Mich App 117; 323 NW2d 617 (1982) (felonious assault); *People v Thompson,* 111 Mich App 324; 314 NW2d 606 (1981) (assault with intent to do great bodily harm). However, arson has also been found to "clearly" be "a personal wrong or injury" covered by the exception. See *People v Butler,* 430 Mich 434, 439; 424 NW2d 264 (1988) (rejecting a contrary interpretation as illogical and unreasonable). In *Butler,* the Supreme Court specifically disapproved of a requirement that the wrong or injury be "purely personal in its character, and in no sense . . . embrace public wrongs, which are personal only in the sense that they wound feelings or annoy or humiliate, but inflict no injury upon the person." *Id.* (criticizing *People v Quanstrom,* 93 Mich 254, 257-260; 53 NW 165 [1892], which held that bigamy was not a personal wrong or injury). The *Butler* Court noted that arson not only "places the person in great danger, [but also] . . . threatens or destroys personal property." 430 Mich 440. Therefore, in the appropriate case, the destruction of personal property can constitute "a personal wrong or injury."

Here, defendant broke into the marital home, damaged the door frame, and took not only his personal property, but also joint property and property belonging to his wife.[2] He did this knowing that it would violate a restraining order. As in *Butler,* defendant did more than "wound the feelings or annoy or humiliate." He clearly interfered with his wife's right of possession arising from the restraining order. See *Szpara, supra* at 273-274. He also interfered with her right of peaceful habitation, causing her to change the locks and phone number, vacate the home, and seek psychological help. See *People v Winhoven,* 65 Mich App 522, 527-528; 237 NW2d 540 (1975) (breaking and entering statutes protect the right of peaceful habitation). We also note, as will be discussed below, that defendant's conduct was part of a pattern of hostile behavior against his family, which included a felonious assault upon his sixteen-year-old stepdaughter.

In our opinion, defendant's conduct constitutes "a personal wrong or injury" against his wife. As in *Butler,* "we reject a contrary interpretation as illogical and unreasonable." 430 Mich 439. We agree that

> [i]f the wife could not complain of or be a witness against her husband in these cases, she might not unfrequently (sic) be subjected to the most atrocious and brutal conduct from her husband without remedy. Not only the ends of justice, but public policy alike, require that she should be at liberty to complain and prosecute as if she were a *feme sole* in criminal cases. The law will not allow the marriage relation to be so used as to protect the criminal, or shield him from the just penalty

---

[2] Defendant removed his tools, two guns, two radios, a camera, a picture, part of his wife's phone bill, and the keys to his motorcycle.

for his crime. [*People v Sebring,* 66 Mich 705, 707;
33 NW 808 (1887) (involving an assault with intent
to do great bodily harm) (quoted approvingly in
*Butler, supra* at 440-441).]

Defendant's wife was properly allowed to testify.

Finally, defendant argues that his minimum
sentence of eighty-six months violates the princi-
ple of proportionality announced in *People v Milb-
ourn,* 435 Mich 630; 461 NW2d 1 (1990), because it
is more than seven times the highest minimum
sentence recommended by the guidelines. We dis-
agree.

Under *Milbourn,* "[w]here there is a departure
from the sentencing guidelines, an appellate
court's first inquiry should be whether the case
involves circumstances that are not adequately
embodied within the variables used to score the
guidelines." *Id.* at 659-660. Thus, "in the absence
of factors not adequately reflected in the guide-
lines[, a departure] should alert the appellate court
to the possibility that the trial court has violated
the principle of proportionality and abused its
sentencing discretion." *Id.* at 660. Further, "[e]ven
where some departure appears to be appropriate,
the extent of the departure (rather than the fact of
the departure itself) may embody a violation of the
principle of proportionality." *Id.*

Thus, in determining the proportionality of a
minimum sentence that exceeds the range recom-
mended by the guidelines, an appellate court
should ask: "What unique facts exist that are not
already adequately reflected in the guidelines, and
why do such facts justify any departure from the
guidelines?" and "If there is to be a departure,
what should be its magnitude and the justification
for the specific departure imposed?" *People v Har-
ris,* 190 Mich App 652, 668-669; 476 NW2d 767

(1991)[3]; see also *People v Benson,* 200 Mich App 598, 603; 504 NW2d 911 (1993).

*Milbourn* identifies "the prior relationship . . . between the victim and the offender" as an "important sentencing factor . . . not included in the sentencing guidelines." 435 Mich 660. The Court noted that such a relationship "can be a very mitigating circumstance or a very aggravating circumstance, depending upon the history of interaction between the parties." *Id.* at 660-661.

In *Milbourn,* the defendant was sentenced to a term of ten to fifteen years after being found guilty of breaking and entering into the apartment he shared with his former girl friend with intent to maliciously destroy her property. *Id.* at 634. The Court found that the prior relationship between the parties was not an aggravating factor because the defendant's "apparent purpose [was] making an emotional and destructive statement about the breakup" and his acts "were visited against property rather than persons." *Id.* at 667-668. The Court especially noted that, although the defendant had engaged in several hostile acts in the week or so following the breakup, he "did not have a long history of hostile acts against the complainant, and he had not at the time of this offense engaged in other malicious behavior toward the victim." *Id.* at 634, 668. The Court also noted that "the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system" and that imposing the highest penalty available upon a young person with no criminal record "left

---

[3] We need not discuss the first question in the *Harris* test—"If the sentence is to be within the guidelines, where in the guidelines range should the sentence fall?"—because the trial court had already chosen to depart from the guidelines.

no room for" imposing a stiffer sentence "on an offender convicted of a breaking and entering who has a previous record for this kind of offense or whose criminal behavior is more aggravated than in Mr. Milbourn's case." *Id.* at 668-669.

In contrast, defendant in this case did not take the property to make some sort of "emotional statement" about the impending divorce. Rather, he admitted that he took the property to sell or keep, in knowing violation of the restraining order. Further, he took his wife's phone bill because he wanted her new phone number so that he could call her, again in violation of the restraining order.

Additionally, defendant had a long history of hostile acts against his wife and her children. For example, during a prior unauthorized entry, defendant brandished a knife before his sixteen-year-old stepdaughter after she surprised him inside the house. During that same entry, defendant took his wife's phone bill and called all the numbers she had called on the day she filed for divorce. Defendant admitted that, on another occasion, he smashed the leg of a chair on a table, apparently in an attempt to intimidate his wife. These incidents belie defendant's assertion that he merely committed a property crime.

Further, because these incidents had been occurring throughout the six-month pendency of the divorce proceedings, defendant's behavior could not be considered "essentially one episode of irrational and destructive behavior," but rather part of a pattern of hostile and malicious behavior against his estranged wife. See *Milbourn, supra* at 669. We thus conclude that defendant's prior relationship with the victim constituted a "very aggravating circumstance" that was not considered un-

der the guidelines and that justified a departure from the guidelines. See *id.* at 660-661.

During sentencing, the trial court justified the minimum sentence of seven years and two months by indicating that defendant had repeatedly violated the restraining order and had been held in contempt, and that his "history convinces the Court that he will do so again." The court noted that "it took a substantial risk in continuing [defendant's] bond" after he was convicted of unauthorized entry and felonious assault of his stepdaughter, believing that defendant would accept the judgment of an impartial jury. Instead, defendant absconded before sentencing and committed this offense.

The court noted that defendant continued to refuse to take responsibility for his actions and instead blamed his conviction on what he perceived to be incompetence of his trial counsel and on the unfairness of the trial judge. The court also pointed out that defendant had admitted being violent on at least one occasion, when he broke the chair leg.[4] The court found that defendant constituted "a clear and present danger to his wife and family" and noted that the felonious assault conviction resulted from an "unauthorized entry that went bad." The court also noted that defendant had an alcohol and drug abuse problem that he had not controlled and that caused him to "lose his inhibitions." The court concluded that the sentence was proportional because of the enormous emotional damage done to the victim and to her daughter, because of the repetitive nature of

---

[4] During sentencing, defendant's wife alleged other instances of drunken violence, but the trial court chose not to hold an evidentiary hearing to resolve defendant's objections and, by agreement with counsel, only considered the wife's testimony as demonstrating "the degree of damage that has been done to her as an individual by this person's repeated failure to follow the law."

the offense, and because of defendant's lack of remorse. Its major goal, however, was to protect defendant's wife and her children.

We believe that the trial court sufficiently justified not only the fact of a departure but also its degree on the basis of factors not adequately considered under the guidelines. The zero to one-year minimum sentence recommended by the guidelines would have been a mere slap on the wrist in a case like this and would likely have been ineffective in deterring defendant from his abusive course of conduct. We also note that the sentence imposed in this case, unlike the one at issue in *Milbourn,* leaves room to impose a harsher sentence on defendants with longer prior records or where the circumstances of the felony intended are more aggravated.[5] Defendant's sentence, though admittedly quite severe, is not disproportional under the circumstances of this case.

Affirmed.

[5] Under *People v Tanner,* 387 Mich 683, 690; 199 NW2d 202 (1972), the harshest minimum sentence that a court may impose is two-thirds of the statutory maximum. Here, that would be a minimum sentence of ten years. See MCL 750.110; MSA 28.305.