**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 08a0705n.06**
**Filed: November 18, 2008**

**No. 07-1046**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| EMMANUEL JACOBS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| TERRY SHERMAN, Warden, | ) | |
| | ) | AMENDED |
| Respondent-Appellee. | ) | |

**Before: CLAY, GILMAN, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.** Emmanuel Jacobs was convicted in Michigan court in 1990 of first degree felony murder and of the use of a firearm during the commission of a felony. He received a mandatory sentence of life imprisonment for the murder, plus two years for the firearm charge. Jacobs now appeals the federal district court's denial of a writ of habeas corpus.

Although the district court did not grant a certificate of appealability, this court granted a certificate with regard to three issues: (A) whether the trial court adequately instructed the jury that the prosecution had the burden of proving beyond a reasonable doubt that Jacobs did not act in the heat of passion, (B) whether the felony murder conviction was supported by sufficient evidence of an intent to commit the underlying felony of larceny, and (C) whether Jacobs's trial counsel was

ineffective for (1) failing to move for a directed verdict on the larceny element of felony murder, (2) failing to request a "claim-of-right" jury instruction, and (3) failing to object to the jury instruction regarding the prosecution's burden of proof. Because Jacobs does not show that the relevant state court unreasonably applied established federal law, the district court properly resolved these issues against Jacobs.

## I.

On June 12, 1990, Jacobs (then 18) and Cynthia Alexander (then 15), went to the home of William Armstrong. Alexander had asked several acquaintances to help her recover property that she claimed belonged to her from Armstrong's home, but only Jacobs chose to accompany her. Although Jacobs claims that he believed he was helping Alexander retrieve her belongings, upon arriving at Armstrong's home, they broke a rear window to gain entry. After entering the house, Alexander retrieved a VCR, which she claimed belonged to her, and offered it as payment to the person who drove them there. Shortly thereafter, they retrieved two weapons from Armstrong's bedroom—a shotgun, which Jacobs promptly loaded, and a machine gun, which Jacobs verified was loaded.

Jacobs and Alexander waited at the house for several hours. According to Jacobs, shortly before Armstrong arrived home, Alexander told Jacobs that Armstrong had raped her, which upset Jacobs. When Armstrong arrived, Jacobs fatally shot him. Jacobs and Alexander left Armstrong's house in Armstrong's vehicle. Later that evening, police legally arrested them both after observing

suspicious activity. After placing Jacobs in custody, the police searched Jacobs and the vehicle, and discovered Armstrong's wallet and an empty shell casing on Jacobs's person. Police subsequently investigated the murder and found Armstrong's body, which had been concealed by Jacobs and Alexander.

Jacobs was tried and convicted of first degree felony murder and of a firearm felony. The trial court gave lengthy instructions to the jury on how to apply the law. On December 13, 1990, the state trial court sentenced Jacobs to a mandatory life sentence, plus two years. Jacobs sought appellate relief in the Michigan state courts, which finally denied further review in 2004.

In considering Jacobs's claims that are on review here, the Michigan Court of Appeals did not find a constitutional violation. With regard to the burden of proof on the absence of heat of passion, the Court of Appeals noted that

> the jury was instructed that the crime of murder could be reduced to voluntary manslaughter if the killing was committed in the heat of passion. Because no objection was raised regarding the failure to clearly allocate the burden of proof, reversal is possible only if manifest injustice resulted. [citation omitted] The instruction given, while arguably imperfect, fairly presented to the jury the issues to be tried, and we do not find manifest injustice in this case.

With regard to the sufficiency of the evidence to prove larceny, the Court of Appeals reasoned that the evidence would have permitted the jury to find that, if Jacobs believed that he was helping Alexander retrieve her own property from Armstrong's house, that belief was not in good faith. With regard to the claims of ineffective assistance of counsel, the Court of Appeals did "not

conclude that counsel's performance was deficient or so erroneous that counsel was not functioning as an attorney as guaranteed under the Sixth Amendment."

On federal review, the district court adopted a magistrate's report and recommendation to deny habeas relief. The magistrate judge reviewed each of Jacobs's claims, and found that the decision of the Michigan Court of Appeals "did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of facts in light of the evidence presented in the state court proceeding." The magistrate also did not find any of Jacobs's arguments to be persuasive on the merits.

## II.

The rulings of Michigan's courts must be upheld unless they erred by applying the law in a way "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or by basing a decision on "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Factual findings of the Michigan courts, including facts supporting the jury verdict, are "presumed to be correct" unless the presumption is rebutted "by clear and convincing evidence." *Id.* § 2254(e)(1).

## A. Jury Instructions on Burden of Proof

Jacobs argues that the jury instructions were defective in that they "failed to inform the jury that the State had the burden to prove beyond a reasonable doubt that [Jacobs did not] act in the heat of passion" in order for the jury to return a murder conviction. However, this claim is both procedurally defaulted and substantively meritless.

*1. Procedural Default*. Jacobs did not object to this aspect of the jury instructions at trial. The Michigan courts therefore denied review of this claim on anything other than a "manifest injustice" standard, similar to the "plain error" standard in federal court. Jacobs argues that his default should be excused because his trial counsel was ineffective. However, for the ineffective assistance claim to succeed, Jacobs would have to show that (1) the jury instructions given were inadequate, (2) counsel's failure to object was objectively unreasonable, and (3) different instructions would have so likely changed the outcome of the trial that the result is unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). However, as shown below, the instructions given were adequate. Therefore, counsel's failure to object was not objectively unreasonable, and Jacobs cannot show that a different instruction would so likely have changed the outcome of his trial as to render the jury's verdict constitutionally deficient. Because Jacobs cannot show that his counsel was ineffective, he cannot excuse his procedural default.

*2. Substantive Consideration*. The jury instructions informed the jury that the prosecution had to prove that Jacobs did not act in the heat of passion. Because Jacobs was charged with first degree felony murder, the state had to prove beyond reasonable doubt that Jacobs had the requisite mens rea. Since manslaughter is a defense to first degree felony murder, Jacobs would have been

entitled to acquittal unless the prosecution proved beyond reasonable doubt that Jacobs did not act

in the heat of passion. The jury was instructed that the prosecution had this burden of proof.

Relevant instructions included:

> The defendant is not required to prove his innocence or to do anything. Every crime is made up of parts called elements. The prosecutor must prove each element of the crime beyond a reasonable doubt. If you find that the prosecutor has not proven every element beyond a reasonable doubt, then you must find the defendant not guilty.

> To establish first-degree felony murder, the prosecution must prove each of the following elements beyond a reasonable doubt: . . . Third, if you find that the death was caused by the defendant, you must determine whether the defendant is guilty of any crime. The killing of a human being by another may be entirely innocent. It is not the act of killing in itself which makes it a crime, but the state of mind with which it is done. A killing is not murder if it is justified or excused or if it occurs under circumstances which make the killing the lesser crime of manslaughter.

Then, after instructing the jury regarding the elements of the underlying felony of larceny and second degree murder, the trial court instructed the jury on manslaughter as follows:

> The crime of murder may be reduced to voluntary manslaughter if the killing is committed under the influence of passion or in heat of blood produced an adequate provocation and before a reasonable time has elapsed for the blood to cool. Manslaughter is distinguished from murder in that with voluntary manslaughter: First, the mind or reason of the defendant is, at the time of the act, disturbed or clouded by mental or emotional excitement to an extent which might make an ordinary person likely to act rashly or without due deliberation or reflection and from passion, rather than judgment. Second, the cause of such disturbance must be something which would cause ordinary persons to act rashly. The law does not state what things are sufficient to produce such a reaction. Anything that would naturally tend to produce such a state of mind in an ordinary person is sufficient. Third, the killing must result from such provocation or passion; that is, the killing must have occurred before a reasonable time had elapsed for the blood to cool and for a reason

to resume its control. No precise time can be laid down. The test is whether or not a reasonable time has elapsed under these particular circumstances.

These instructions twice told the jury that the prosecution must prove every element, including intent, beyond reasonable doubt. The instructions, when read as a whole, adequately placed the burden for proving the lack of manslaughter circumstances squarely on the prosecution. *See Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."). This court will not assume that a jury ignored explicit instructions; the court of appeals presumes that "jurors follow their instructions." *United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001). Therefore, there is no constitutional violation.

Jacobs speculates that the jury assigned to him the burden of proof on whether he acted in the heat of passion or not, but offers no credible support for this theory. Had Jacobs's attorney objected, the trial court might have added another instruction specifically stating that the prosecution had to prove that Jacobs's actions were not manslaughter. But a lack of perfect clarity alone does not make instructions constitutionally problematic. The Supreme Court has held that ambiguous jury instructions do not violate the Constitution where there is not "a reasonable likelihood" that the jury applied the instructions unconstitutionally. *See Boyde v. California*, 494 U.S. 370, 380 (1990). Indeed, Jacobs must demonstrate that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147. And Jacobs's burden is "especially heavy" here given that "[a]n omission, or an incomplete instruction, is less likely to be

prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Because the instructions explicitly placed the burden of proof regarding intent on the prosecution, including the burden of proving the absence of heat of passion, Jacobs cannot clear this high bar to relief. Moreover, nothing suggests that the jury would have reached a different result had the instructions been rewritten. Indeed, after retiring to deliberate, the jury asked for and received a written copy of the instructions regarding the elements of each crime to assist in deliberations, so it is unlikely that the jury did not follow the given instructions.

We agree with Jacobs's counsel's statement at oral argument that jury instructions should be clear. However, the burden of ensuring clarity rests upon the parties as well as the court, and not every unclear instruction gives rise to plain constitutional error. The jury instructions in this case, though they may not have been perfect, were constitutionally adequate. Jacobs's objection to the instructions thus is both procedurally defaulted and insufficient on the merits.

## B. Sufficiency of the Evidence of Larceny

The Michigan courts' determination that sufficient evidence supported a conviction on the charge of larceny was not an unreasonable application of federal law. On habeas review, federal courts must assume that the jury "resolve[d] conflicts in the testimony," "weigh[ed] the evidence," and drew "reasonable inferences" therefrom. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). They then view the evidence "in the light most favorable to the prosecution." *Id.* Under this standard, sufficient evidence supported this charge.

According to the jury instructions, larceny under Michigan law, involves (1) taking the property of another, (2) moving the property of another, (3) at the time of the taking, intending to deprive the owner permanently of the property, (4) taking the property without the consent of the owner, and (5) taking property that had some value. *Cf. People v. Honer*, 1996 WL 33362656, *1 (Mich. Ct. App. Jun. 18, 1996); *People v. Pohl*, 507 N.W.2d 819, 820 (Mich. Ct. App. 1993). Jacobs does not dispute that there is sufficient evidence for all but the third element, and as to that element—specific intent—there is also sufficient evidence.

Jacobs helped remove property from Armstrong's home under suspicious circumstances, after breaking in. Almost immediately thereafter, he helped secure two loaded weapons from Armstrong's bedroom. Jacobs shot Armstrong, then obtained his wallet. Jacobs and Alexander then took Armstrong's car.

From this evidence, the jury could reach several conclusions supporting intent, including: that Jacobs did not believe that all of the property he helped take actually belonged to Alexander, that Jacobs unreasonably believed that Alexander had a claim to all the property taken, or that before Jacobs pulled the trigger, he intended to kill Armstrong and take his property. Any of these three conclusions (all supported by inferences from the evidence) is sufficient to sustain a charge of larceny—each has the specific intent of trespassory deprivation. While the prosecution could have offered more proof on the element of specific intent, the prosecution offered enough to survive a sufficiency challenge. Moreover, the element of specific intent was not overlooked—the prosecution

argued that Jacobs "had larceny in [his] heart[] when [he] got there." Further, the jury instructions contained the required elements of larceny, including the specific intent element.

Jacobs argues that the only *direct* evidence of Jacobs's intent was his own (self-serving) testimony. However, the evidence discussed above supports inferences as to Jacobs's intent, and this court must assume that the jury believed those inferences rather than Jacobs's testimony. Specific intent, "like any other fact, may be proven indirectly by inference from the conduct of the accused and surrounding circumstances." *People v. Lawton*, 492 N.W.2d 810, 815 (Mich. Ct. App. 1992) (quotation marks omitted). Likewise, evidence that others believed that Alexander had a claim of right to some of the property taken does not overcome the jury's finding that Jacobs himself had larcenous intent. The prosecution was not required to "dispute" whether the others' beliefs were in good faith or not; it merely had to present evidence sufficient that a rational trier of fact could conclude beyond a reasonable doubt that Jacobs had larcenous intent. Likewise, though the evidence supports an inference that Jacobs may have formed a larcenous intent after breaking in, or after shooting Armstrong, the jury actually found that the larcenous intent arose before the murder.

Jacobs's contention that the evidence supporting his claim that he was helping Alexander retrieve her belongings "outweighs" the evidence supporting the jury's finding that he intended to commit larceny misstates the relevant test. This Court does not engage in a balancing of the evidence, but rather considers whether the decision of the Michigan courts finding that there was sufficient evidence to support the jury's verdict was *unreasonable*. Jacobs fails to show that the Michigan courts' application of federal law on this point was unreasonable. Even if somehow this

court were inclined to find, de novo, that sufficient evidence did not support the charge of larceny, this court, under AEDPA, may only grant habeas if the state court has made a decision contrary to, or unreasonably applied, federal law. *See Williams v. Taylor*, 529 U.S. 362, 404-411 (2000).

## C.  Ineffective Assistance of Counsel

Jacobs's claims that his counsel provided constitutionally ineffective assistance also lack merit.

*1.  Moving for a Directed Verdict.*  Jacobs argues that his counsel was constitutionally ineffective because counsel did not move for a directed verdict on the larceny element of felony murder.  Jacobs presents no argument as to how the Michigan courts' resolution of this issue on appeal was an unreasonable application of federal law.  Moreover, on de novo review, this court would not resolve the issue differently.  As discussed above, sufficient evidence supported a finding of larceny—a directed verdict would not have been granted had it been requested.  Therefore, counsel cannot have been ineffective for failing to request it, as failing to make a futile motion is neither unreasonable nor prejudicial.  *See Strickland*, 466 U.S. at 687.

*2.  Requesting a Claim of Right Instruction.*  Jacobs argues that his counsel was objectively unreasonable for failing to request a jury instruction stating that Jacobs could not be guilty of larceny if he took property with a good faith belief that it belonged to Alexander.  The Michigan Court of Appeals rejected this argument, concluding "that counsel's closing argument adequately framed and

addressed the claim of right defense, and that Jacobs was not prejudiced by counsel's failure." Jacobs does not dispute this characterization of his counsel's closing argument.

Rather, Jacobs argues that Michigan law would have required that the claim-of-right instruction be given if requested. But even if counsel was unreasonable in not requesting the instruction, and even if more competent counsel could have obtained clearer jury instructions, to obtain federal habeas relief Jacobs must show that the Michigan courts' conclusion that any error was not prejudicial is unreasonable. Jacobs cites no federal law to suggest that the Michigan Court of Appeals unreasonably applied federal law in rejecting his ineffective-assistance claim.

The jury instructions in this case stated that specific intent is a necessary element of larceny. "The crime of larceny requires proof of specific intent. This means that the prosecution must prove not only that the defendant did certain acts, but that he did the acts with the intent to cause a particular result. For the crime of larceny, this means that the prosecution must prove that the defendant intended to deprive the owner permanently of his property. The defendant's intent may be proved by what he said, by what he did, how he did it, or by any facts and circumstances in evidence."

While an instruction that a claim of right negates specific intent might have further clarified these instructions, the jury's finding that Jacobs did have the requisite intent necessarily implies that it rejected the claim-of-right defense. The jury could not have found that Jacobs had the specific intent to deprive the *owner* of property if it thought that Jacobs thought the owner was Alexander.

Because the jury instructions in this case did properly set forth the elements of larceny, it is reasonable to conclude that it is not sufficiently likely that the jury would have reached a different result to consider counsel's actions prejudicial to Jacobs under *Strickland*. *See* 466 U.S. at 687. We therefore do not need to resolve whether counsel's failure to request a clarifying instruction was so unwise as to be objectively unreasonable in the first place.

The Michigan courts' resolution of the ineffective assistance of counsel issue regarding claim of right was not an unreasonable application of federal law. Moreover, even if this court had the power to review the matter de novo, nothing suggests that it should find counsel ineffective on this point.

*3. Objecting to the Jury Instructions on Burden of Proof.* Jacobs finally argues that his trial counsel was ineffective for failing to object to the jury instructions regarding the burden to prove lack of heat of passion. As discussed above, the jury instructions were adequate regarding the burden of proof that Jacobs did not commit manslaughter. This claim thus does not support an ineffective-assistance claim because it fails both prongs of *Strickland*—it is not objectively unreasonable to fail to object to adequate jury instructions, and failure to object to adequate jury instructions is unlikely to prejudice a defendant. *See* 466 U.S. at 687. Moreover, the Michigan courts' resolution of this issue is not an unreasonable application of federal law.

**III.**

For the foregoing reasons, the judgment of the district court is affirmed.